**Board of Mgrs. of the Promenade Condominium v Eshaghpour**

2024 NY Slip Op 32963(U)

August 20, 2024

Supreme Court, New York County

Docket Number: Index No. 850669/2023

Judge: Gerald Lebovits

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. GERALD LEBOVITS                          PART                    07
                                          *Justice*

-------------------------------------------------------------------------------X

BOARD OF MANAGERS OF THE PROMENADE CONDOMINIUM,

                                        Plaintiff,

ROBERT JACKMAN, DUNCAN MCCUAIG, NANCY MCCUAIG, THOMAS WEST, JEAN-CHRISTOPHE LE PICART, ARTHUR J. MIRANTE, AKAM ASSOCIATES, INC, ALEXIS KAMINOFF-FRITZ, MULLIGAN SECURITY LLC, and HECTOR ESPANA,

                                        Counterclaim Defendants,

                        - v -

ROBIN ESHAGHPOUR, ELENA ESHAGHPOUR, EAST RIVER CONDO LLC, BRAVO REALTY CORP., DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR HARBORVIEW MORTGAGE LOAN TRUST 2005-9, U.S. BANK, N.A., SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A., SUCCESSOR TO LASALLE BANK, N.A., AS TRUSTEE FOR THE WAMU MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR6, CITIBANK, N.A., WELLS FARGO BANK, N.A., STROOCK & STROOCK & LAVAN, LLP, CRAIG D. WEINER, NATIONAL CABINET AND MILLWORK INSTALLATION, LLC, SKYLINE WINDOWS, LLC, THE BANK OF NEW YORK MELLON, AS COLLATERAL AGENT AND CUSTODIAN FOR THE NYCTL 2017-A TRUST, and JOHN DOES 1 - 10,

                                        Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 850669/2023 |
| MOTION SEQ. NO. | 002 004 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 71, 72, 73, 74, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 100

were read on this motion to                                 DISMISS                                 .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 101, 102, 103, 104, 105, 106, 107, 108, 114, 115, 116, 117, 118, 119, 120

were read on this motion to                                 EXTEND TIME                                 .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 143, 145

were read on this motion to                         AMEND CAPTION/PLEADINGS                         .

[* 1]

*Meister Seelig & Fein PLLC*, New York, NY (Stephen B. Meister and Kevin Fritz of counsel), for plaintiff and for counterclaim-defendants Robert Jackman, Duncan McCuaig, Nancy McCuaig, Thomas West, Jean-Christophe Le Picart, Arthur J. Mirante II, AKAM Associates, Inc., and Alexis Kaminoff-Fritz.
*Blank Rome LLP*, New York, NY (Massimo F. D'Angelo and Gregory Wong of counsel), for defendants-counterclaim-plaintiffs Robin Eshaghpour, Elena Eshaghpour, East River Condo LLC.

Gerald Lebovits, J.:

In December 2023, plaintiff, Board of Managers of the Promenade Condominium, sued to impose a lien on condominium units owned by defendants Robin Eshaghpour, Elena Eshaghpour, and East River Condo, LLC. Defendants allegedly breached a settlement obligation to pay unpaid common charges. In March 2024, defendants answered the complaint[1] and raised counterclaims against the board, Duncan McCuaig, Nancy McCuaig, Thomas West, Jean-Christophe Le Picart, Robert Jackman, Arthur J. Mirante II, AKAM Associates, Inc., Alexis Kaminoff-Fritz, Mulligan Security LLC, and Hector Espana.

On motion sequence 002, the board, board members Duncan McCuaig, Nancy McCuaig, Thomas West, Jean-Christophe Le Picart, Arthur J. Mirante II, Robert Jackman, AKAM Associates, Inc., and Alexis Kaminoff-Fritz (movants) moved in April 2024 to dismiss defendants' counterclaims. In May 2024, defendants filed an amended answer with counterclaims. Movants have asked that their motion to dismiss be directed to the counterclaims as alleged in the amended answer. (*See* NYSCEF No. 92.) The motion is granted in part and denied in part.

On motion sequence 004, defendants move under CPLR 2004 for an additional 30 days to oppose movants's motion to dismiss.[2] (NYSCEF No. 101 [notice of motion].) Defendants' motion is denied.

On motion sequence 005, defendants move for leave to file a second amended answer to raise a counterclaim against a nonparty. Defendants' motion is denied.

## DISCUSSION

### I.      Extension of Time to File Opposition (Mot Seq 004)

As a preliminary matter, the court concludes that defendants are not entitled to an extension of time to oppose the motion to dismiss their counterclaims. Defendants chose to file an amended answer with counterclaims without filing opposition papers. The court agrees with movants that in these circumstances, defendants essentially seek to file a sur-reply, which is improper under 22 NYCRR 202.8-c. The court will apply movants' motion to defendants' amended answer with counterclaims and decide the motion accordingly. (*See Sage Realty Corp.*

---

[1] Mr. Eshaghpour answered on his own behalf and on his children's behalf.

[2] Motion sequence 003 was withdrawn. (*See* NYSCEF No. 121.)

2

*v Proskauer Rose LLP*, 251 AD2d 35, 38 [1st Dept 1998] ["[T]he moving party has the option to decide whether its motion should be applied to the new pleadings."].)

## II.    Breach of Fiduciary Duty (First Counterclaim) (Mot Seq 002)

Defendants allege that the board, McCuaig (current board president), West (board treasurer), Le Picart (board member), and Mirante (board member and previous president) owe a fiduciary duty to act in defendants' best interests and that they violated those duties. (NYSCEF No. 29 at ¶¶ 411-412.) Movants seek to dismiss this counterclaim under CPLR 3211 (a) (5) and (7).

### a.  CPLR 3211 (a) (5)

Movants argue that defendants' breach-of-fiduciary-duty claim is barred by the statute of limitations. Defendants filed their counterclaims on March 22, 2024. Movants contend that any claim stemming from conduct that predates March 22, 2021, is time-barred.

The applicable limitation period for a breach-of-fiduciary-duty claim depends on the substantive remedy sought. When the relief sought is equitable, a six-year limitation period applies. (CPLR 213 [1].) If the claimant seeks only monetary damages, a three-year limitation period applies. (*See Kaufman v Cohen*, 307 AD2d 113, 118 [1st Dept 2003].) When both legal and equitable relief are sought, the statute of limitations depends on the essence of the action. A request for equitable relief does not extend the limitations period to six years if the primary objective of the claim is to recover monetary damages. (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 139 [2009].)

On their breach-of-fiduciary-duty counterclaim, defendants seek "(a) damages against the Board Defendants in an amount to be determined at trial; (b) a full and complete accounting from the year 2018 to the present of all amounts: (i) charged by the Board and its representatives against the Eshaghpour Defendants; and (ii) paid by the Eshaghpour Defendants to the Board and its representatives;" and then "(c) an injunction enjoining the Board Defendants from: (i) discriminating against the Eshaghpour Defendants; and (ii) otherwise intentionally causing harm to the Eshaghpour Defendants." (NYSCEF No. 77 at ¶ 431.) Moreover, defendants raise separate claims for equitable relief. Defendants thus prioritize monetary relief over injunctive relief on their breach-of-fiduciary-duty counterclaim. For this reason, the three-year limitation period applies. Any breach-of-fiduciary duty claim that accrued more than three years before March 22, 2024, is time-barred.[3]

---

[3] Defendants do not technically raise this claim against Jackman individually. (*See* NYSCEF No. 63-64.) But even if they had, those claims would be time-barred. Defendants' allegations against Jackman stem from incidents that occurred more than three years prior to the filing of defendants' counterclaims.

3

### b. CPLR 3211 (a) (7)

Defendants claim that the board, McCuaig (current board president), West (board treasurer), Le Picart (board member), and Mirante (board member and previous president) owed fiduciary duties to act in defendants' best interests and that they violated those duties. (NYSCEF No. 77 at ¶ 428.) Movants argue that they may not be held liable on the grounds that (i) their decisions are protected by the business judgment rule, (ii) defendants' allegations of tortious conduct are conclusory, and (iii) defendants' allegations at most establish nonactionable incivility or nonfeasance. (NYSCEF No. 74 at 3-4.)

The business judgment rule "provides that a court should defer to a [condominium] board's determination [s]o long as the board acts for the purposes of the [condominium], within the scope of its authority and in good faith." (*72 Poplar Townhouse, LLC v Board of Mgrs. of the 72 Poplar St. Condominium*, 224 AD3d 645, 647 [2d Dept 2024] [internal quotation marks omitted].) But a breach-of-fiduciary-duty claim against individual managers may overcome the business judgment rule if the complainants "allege any individual wrongdoing by the members of the board separate and apart from their collective actions taken on behalf of the condominium." (*Pine St. Homeowners Ass'n v 20 Pine St. LLC*, 109 AD3d 733, 735-736 [1st Dept 2013].) Alternatively, the claim may overcome the business judgment rule if the pleading alleges (or evidence establishes) that the manager participated in the condominium's tort. (*See Bd. of Managers of Alfred Condominium v Miller*, 202 AD3d 467, 468 [1st Dept 2022].)

The court concludes that defendants have pleaded a timely and sufficient cause of action for breach of fiduciary duty against the individual directors. Defendants' counterclaims allege in detail that the individual board members, mostly in their individual capacities, intimidated and harassed defendants and their children. The court is unpersuaded by movants' argument that the allegations are insufficient to amount to independent tortious conduct. (*See* NYSCEF No. 74 at 4.) Nor does the alleged conduct consist merely of nonfeasance. (*Cf. Pomerance v McGrath*, 143 AD3d 443, 448 [1st Dept 2016] [holding that allegations by plaintiff "that the board did not honor her inspection rights and failed to respond adequately to her complaints of noise" amounted "only to mere nonfeasance for which the board members cannot be held individually liable"].)

The court further concludes that defendants have pleaded a timely and sufficient cause of action against the board. To plead a breach-of-fiduciary-duty claim, it is sufficient to allege that there was an "unequal treatment of shareholders." (*Bryan v West 81 Street Owners Corp.*, 186 AD2d 514, 515 [1st Dept 1992]; *accord GPS Glob. Parking Sols., LLC v 151 W. 17th St. Condominium*, 93 AD3d 463, 464 [1st Dept 2012] [holding that allegations that the condominium board and its members "directed employees of the condominium to continue to trespass on plaintiff's personal property and disrupt its business in bad faith and in furtherance of their personal 'grudge' against plaintiff or its principal" were sufficient to overcome the business judgment rule].)

Here, defendants allege that the board prevented defendants from fixing hot-water problems; hired AKAM as site manager, Kaminoff-Fritz as property manager, and Mulligan Security Company (all of whom who harassed defendants); issued notices that defendants'

4

breached the parties' settlement agreement; prohibited defendants' child from using the Promenade's gym for therapy sessions by instituting new building rules and without providing accommodations for defendants' child; forced defendants to pay for violations caused by neighboring units; and amended by-laws to target defendants. (*See* NYSCEF No. 77 at 38, 49, 55, 60-63 [amended answer and counterclaims].) Defendants have sufficiently alleged that the board made these decisions as a way to treat defendants unequally.

The court concludes, on the other hand, that the board's alleged decision not to fix the July-August 2020 and March 2024 water leaks is protected by the business judgment rule. (*See* NYSCEF No. 77 at 38-39.) Defendants do not contend that independent tortious conduct or bad faith toward defendants impacted that decision. The breach-of-fiduciary duty claim against the board is therefore dismissed to the extent it is based on allegations relating to the board's handling of these water leaks.

The branch of movants' motion seeking to dismiss the timely portions of defendants' breach-of-fiduciary-duty counterclaim is granted in part and denied in part.

### III.     Private Nuisance (Fifth Counterclaim) (Mot Seq 002)

In their fifth counterclaim, defendants allege that the McCuaigs "intentionally caused a continuous and substantial interference with" defendants' "right to use and enjoy the Promenade and the Units." (NYSCEF No. 77 at 66.) Movants seek to dismiss defendants' nuisance counterclaim under CPLR 3211 (a) (5) and (a) (7).

To state a private-nuisance cause of action, the party asserting the claim must show that the conduct at issue is "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act." (*61 W. 62 Owners Corp. v CGM EMP LLC*, 77 AD3d 330, 334 [1st Dept. 2010] *affd as mod and remanded* 16 NY3d 822 [2011] [internal quotation marks omitted].) The statute of limitations for private nuisance claims is three years; it begins to run when injury is incurred. (*See* CPLR 214 [4], [5]; *Kamath v Bldg. New Lifestyles, Ltd.*, 146 AD3d 765, 767 [2d Dept 2017].) Therefore, defendants' private-nuisance cause of action is time-barred to the extent that it is based on conduct occurring more than three years before defendants filed their counterclaims.

Movants argue that defendants' private-nuisance claim fails to state a cause of action because defendants have not alleged that the McCuaigs unreasonably interfered with defendants' right to use and enjoy their units. The court disagrees. Even assuming that defendants fail to allege that they were prevented from using their units, they *have* timely alleged that the McCuaigs interfered with their ability to use the condominium's common areas. Defendants allege that the McCuaigs would intimidate defendants as they entered the building, made threats at Mr. Eshaghpour in the lobby, glared at their children in the lobby by the elevator, yelled at defendants' child to vacate the laundry room, and tried to block access to the premises. (NYSCEF No. 77 at 42-46.) These allegations are sufficient to plead that "interference was unreasonable and affected the residents' right to use and enjoy" common areas of the condominium. (61 W. 62 Owners Corp., 77 AD3d at 334; *accord Jerdonek v 41 W. 72 LLC*, 143

[* 5]

AD3d 43, 50 [1st Dept 2016] ["[E]ach unit owner [of the condominium] is the fee owner of a fractional undivided interest in the common elements as part of that owner's common interest appurtenant to the individual unit."].) The court does not reach movants' remaining contentions.

Movants' motion to dismiss this counterclaim is denied.

## IV.     Intentional Infliction of Emotional Distress (Sixth Counterclaim) (Mot Seq 002)

In their sixth counterclaim, defendant claim that the McCuaigs' conduct toward the Eshaghpours and their children constitute an intentional infliction of emotional distress (IIED). Movants seek dismissal of this claim under CPLR 3211 (a) (5) and (7). (NYSCEF No. 80 at ¶¶ 17-18.)

Intentional infliction of emotional distress is a tort claim subject to a one-year limitation period. (*See* CPLR 215 [3].) Thus, to withstand dismissal, defendants' counterclaim must be based on actions by the McCuaigs that occurred within a year before defendants filed their counterclaims in March 2024.

To plead an IIED cause of action, the party asserting the claim must allege "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." (*Howell v New York Post Co.*, Inc., 81 NY2d 115, 121 [1993].) These requirements are "rigorous, and difficult to satisfy." (*Id.* at 122.) Liability is not imposed unless defendant's conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . and utterly intolerable in a civilized community." (*Fischer v Maloney*, 43 NY2d 553, 557 [1978].) Conduct must go beyond mere "insults, indignities, and annoyances;" it must be a "campaign of harassment or intimidation." (*164 Mulberry St. Corp. v Columbia Univ.*, 4 AD3d 49, 56 [1st Dept 2004].)

Movants contend only that defendants have not met the extreme-and-outrageous-conduct element of an IIED claim. (NYSCEF No. 74 at 8-10.) This court disagrees. Defendants allege, among other things, that in May 2023, Mr. McCuaig purportedly "jumped off a treadmill" and told defendants' child that he was going to have a "brawl" with Mr. Eshaghpour; that in September 2023, Ms. McCuaig screamed at one of defendants' children to leave the laundry room; that in November 2023, Mr. McCuaig purportedly attempted to block Mr. Eshaghpour physically from entering the condominium and repeatedly mocked Mr. Eshaghpour; and that in March 2024, Mr. McCuaig purportedly "insulted" Mr. Eshaghpour and gave him a "threatening look." (NYSCEF No. 77 at 42-46.) These actions, taken together, "could be construed in the aggregate as presenting a campaign of harassment." (*164 Mulberry St Corp.*, 4 AD3d at 56.) Therefore, "assuming the truth of plaintiff's allegations, as we must on a motion to dismiss, we cannot say, as a matter of law, that [the McCuaigs'] actions did not rise to the requisite level of outrageous conduct." (*Scollar v City of New York*, 160 AD3d 140, 146 [1st Dept 2018].)

Movants' motion to dismiss this counterclaim is denied.

### V. Permanent Injunction (Second, Third, Fourth, Seventh, Eighth, and Ninth Counterclaims) (Mot Seq 002)

Defendants' second, third, fourth, seventh, eighth, and ninth counterclaims seek permanent injunctions against the board, Jackman, the McCuaigs, West, Le Picart, AKAM, and Kaminoff-Fritz. Movants argue that these counterclaims should each be dismissed under CPLR 3211 (a) (7) on the ground that a request for permanent injunction may not constitute a cause of action. This court is not persuaded that all of the counterclaims for injunctive relief are subject to dismissal at this stage of the action.

It is "permissible to plead a cause of action for a permanent injunction." (*Corsello v Verizon N.Y., Inc.*, 77 AD3d 344, 368 [1st Dept 2010], *mod on other grounds* 18 NY3d 777 [212].) At the same time, "permanent injunctive relief is, at its core, a remedy that is dependent on the merits of the substantive claims asserted." (*Weinreb v 37 Apts. Corp.*, 97 AD3d 54 59 [1st Dept 2012] [internal quotation marks omitted].) The question at this stage, therefore, is whether defendants have asserted counterclaims that, if successful, would support permanent injunctive relief.

As discussed above, defendants have raised substantive counterclaims against the board, the McCuaigs, West, and Le Picart; and permanent injunctive relief could properly be granted in connection with those counterclaims.[4] Therefore, the motion to dismiss defendants' claims for permanent injunctive relief against those parties (the second, fourth, seventh, and eighth counterclaims, respectively) is denied.[5]

With respect to the claims for permanent injunctive relief against Jackman, AKAM, and Kaminoff-Fritz (the third and ninth counterclaims, respectively), defendants have not asserted separate, substantive counterclaims against these parties. As a result, no basis exists to grant permanent injunctive relief against them. The motion to dismiss defendants' third and ninth counterclaims is granted.

### VI. Motion for Leave to File Second Amended Answer with Counterclaims (Mot Seq 005)

On motion sequence 005, defendants move for leave to file a second amended answer with counterclaims. The proposed amendment is limited: It would only amend the ninth counterclaim, for a permanent injunction, to seek that relief also against Dhurata Gjonbalaj, an employee of AKAM and Kaminoff-Fritz. But defendants have not asserted (or proposed to assert) any substantive claim against Gjonbalaj. Defendants' proposed request for permanent

---

[4] The court disagrees with movants that defendants seek a permanent injunction as a way of stating a claim for harassment. The underlying substantive claims defendants raise are not for harassment, but for breach of fiduciary duty, private nuisance, and IIED.

[5] It may ultimately be the case that "the claim[s] for injunctive relief [are] subsumed in other causes of action, but such determination need not be made at this point." (*Corsello*, 77 AD3d at 368.)

[* 7]

injunctive relief against Gjonbalaj is thus wholly without merit for the same reasons that the third and ninth counterclaims are subject to dismissal. (*See Weinreb*, 97 AD3d at 58-59.)

The motion for leave to file a second amended answer with counterclaims is denied. The court does not reach the parties' remaining arguments on this motion.

Accordingly, it is

ORDERED that defendants' motion for an extension of time to oppose movants' motion to dismiss (mot seq 004) is denied; and it is further

ORDERED that the branch of movants' motion seeking dismissal of defendants' first counterclaim (mot seq 002) is granted only with respect to (i) conduct occurring before March 22, 2021, and (ii) the board's alleged decision not to fix the July-August 2020 and March 2024 water leaks, and this branch of the motion is otherwise denied; and it is further

ORDERED that the branch of movants' motion seeking dismissal of defendants' fifth counterclaim (mot seq 002) is granted only with respect to conduct occurring before March 22, 2021, and otherwise denied; and it is further

ORDERED that the branch of movants' motion seeking dismissal of defendants' sixth counterclaim (mot seq 002) is granted only with respect to conduct occurring before March 22, 2023, and otherwise denied; and it is further

ORDERED that the branches of movants' motion seeking dismissal of defendants' second, fourth, seventh, and eighth counterclaims are denied; and it is further

ORDERED that the branches of movants' motion seeking dismissal of defendants' third and ninth counterclaims (mot seq 002) are granted, and defendants' counterclaims are dismissed as against counterclaim-defendants Robert Jackman, AKAM Associates, Inc., and Alexis Kaminoff-Fritz, with costs and disbursements as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further

ORDERED that the balance of the claims and counterclaims in this action are severed and shall continue; and it is further

ORDERED that defendants' motion for leave to file a second amended answer (mot seq 005) is denied; and it is further

8

9

ORDERED that plaintiff serve a copy of this order with notice of its entry on defendant and on the office of the County Clerk (by the means set forth in the court's e-filing protocol, available on the e-filing page of the court's website, https://ww2.nycourts.gov/courts/1jd/supctmanh/E-Filing.shtml), which shall enter judgment accordingly.

HON. GERALD LEBOVITS
J.S.C.

**8/20/2024**
**DATE**

| CHECK ONE: | | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | ☐ GRANTED | ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

9

[* 9]